IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

STEVEN C. LOGSDON,

          Plaintiff,

vs.

BNSF RAILWAY COMPANY,

          Defendant.

8:15-CV-232

ORDER

This matter is before the Court on the parties' motions in limine, and the railroad's motion to limit testimony of the plaintiff's non-retained expert witnesses. Filing 105; filing 172; filing 175; filing 184; filing 191. The Court heard arguments on these motions during an August 21, 2017 hearing. For the reasons explained below, the parties' motions will be granted in part, and denied in part.

### 1. BNSF's Motion in Limine: Filing 172

BNSF requests an order precluding Logsdon, his counsel, and his witnesses from directly or indirectly presenting or arguing 35[1] separate categories of information. Logsdon does not object to several of these categories. Others remain in dispute.

The parties agree, and the Court now orders, that Logsdon shall not present the following at trial:

---

[1] BNSF withdrew objection 12, regarding the potential interjection of insurance, at the Court's August 21 hearing. Filing 172 at 3.

- Any reference to or evidence regarding Berkshire Hathaway or Warren Buffett. The Court will, however, ask the jury about possible business relationships with BNSF during *voir dire*.

- Any reference to or evidence as to the difference in status, size, or strength of Logsdon as an individual and BNSF as a corporation. Filing 189 at 4.

- Any statement asking the jurors to place themselves in Logsdon's position or to imagine his pain or emotions. Filing 189 at 4.

- Any references to inflation or the effect of inflation upon any award of damages in a FELA case. Filing 172 at 4.

- Any reference to the history, congressional intent, or purposes of the Federal Employers' Liability Act or to the remedial purpose of the law. Filing 189 at 5.

- Any reference to this as a "compensation" case. Filing 189 at 9.

- That the damage award in a FELA case is subject to federal income tax. Filing 189 at 9.

- Claims or argument seeking prejudgment interest, as such interest in not recoverable in a FELA claim. Filing 189 at 9.

- Any reference to, or argument, evidence, or testimony that Logsdon has or may have sustained or developed Reflex Sympathetic Dystrophy or Complex Regional Pain Syndrome as a

result of the incident with the coal and slip paper alleged in his FELA claim. Filing 189 at 23.

- Any reference to, or argument, or statement, regarding Robert Long, a former carman and union representative in Alliance. Filing 189 at 23.

- References from either party to any settlement discussions, documents, and statements made therein. Filing 189 at 24-25.

BNSF's motion to exclude reference, evidence, or argument on these points is granted.

BNSF's motion regarding the following information and evidence will be denied without prejudice to reassertion at trial. Indeed, while the parties do not generally dispute these points, and the Court would likely sustain objections on these points, Logsdon argues that they are either overly vague, or may become relevant depending on the evidence adduced at trial.

- Any reference to, evidence, or arguments regarding the size or financial condition of BNSF. Filing 189 at 2.

- Any reference to, evidence, or arguments intended to inflame or arouse feelings of hostility or resentment toward BNSF, including, but not limited to, *e.g.*, plaintiff or anyone else being "railroaded" or reference to the term or like terms. Filing 189 at 2.

- Any statement or argument embellishing or inaccurately summarizing Logsdon's medical history. Filing 189 at 5.

- Any reference to or evidence regarding Logsdon's reputation for safety on the job or reputation as to character. Filing 189 at 5.

- Any reference to or evidence in the nature of "expert" testimony or opinions beyond those specifically disclosed during discovery. Filing 189 at 6.

- Any reference to or evidence regarding any other claims, accidents, incidents, or lawsuits involving defendant BNSF, or any testimony regarding such claims, accidents, incidents, or lawsuits, without the Court first ruling on the relevance, materiality, and admissibility of such matters outside the presence of the jury.

- Any statement by counsel, Logsdon, or any of his witnesses expressing a personal opinion concerning the bona fides or credibility of BNSF's defenses or witnesses or any statement personally vouching for the credibility of plaintiff or his witnesses. Filing 189 at 15.

- Any reference regarding any implication that BNSF or its attorneys have not fully complied with or otherwise properly and fully responded to discovery.

- Testimony of witnesses not previously identified as persons with knowledge of relevant facts and any request of BNSF to stipulate to any facts or matters in front of the jury. Filing 189 at 23-24.

- Questions directed to BNSF counsel in front of the jury. Filing 189 at 24.

- Demands or requests before the jury for matters found or contained in BNSF's file for this action or any other request during the course of the trial and in the presence of the jury.

- Any testimony given over objections in depositions without a ruling thereon by the Court being previously made.

- Any references relating to the attorney client privilege, work product privilege, or privileged communications. Filing 189 at 25.

- Any statement as to what any physician, physical therapist, chiropractor, psychologist, psychiatrists, or any other person practicing the healing arts allegedly told plaintiff or plaintiff's witnesses as to the extent or nature of his or her examinations, alleged findings, disability or physical impairment, diagnosis, or prognosis.

BNSF's motion to exclude reference, evidence, or argument on these points is denied without prejudice to reassertion at trial. To be clear, counsel will need to seek Court permission prior to raising any of the above points in the presence of the jury.

The following topics raised in BNSF's motion in limine are in dispute, or otherwise warrant further discussion.

i. General complaints and comments about unsafe conditions[2]

BNSF moves in limine to exclude any reference to general complaints and comments about the workplace or allegedly unsafe conditions that are not directly related to the specific indecent at issue. Filing 172 at 3. Logsdon objects to this motion as "vague and ambiguous." Filing 189 at 7.

Although evidence of prior accidents may be admissible to prove notice on the part of a defendant, any such accidents admitted "must be sufficiently similar in time, place or circumstances to be probative." *First Sec. Bank v. Union Pacific R.R. Co.*, 152 F.3d 877, 879 (8th Cir. 1998); *see Johnson v. Union Pacific R. Co.*, 2007 WL 2914886, at *3 (D. Neb. 2007). Thus, to the extent Logsdon intends to introduce such evidence, he must show that the facts and circumstances of the other accidents "are substantially similar to the case at bar." *First Sec. Bank,* 152 F.3d at 880. The Court is without sufficient information to rule on BNSF's motion, so it will be denied without prejudice to reassertion at trial.

ii. References to Logsdon's "dire financial condition"

BNSF seeks to exclude any reference or evidence regarding the "stressed or otherwise dire financial condition of plaintiff or his family." Filing 172 at 1. Logsdon argues, and the Court agrees, that testimony regarding his financial condition may be relevant to his damages claim for pain and suffering. However, as Logsdon recognizes, such testimony may, or

---

[2] The Court interprets this objection as separate from BNSF's motions regarding the alleged "rash of injuries" in 2012.

may not, open the door to evidence regarding collateral source benefits. Filing 189 at 4; s*ee Moses v. Union Pacific R.R. Co.*, 64 F.3d 413, 416 (8th Cir. 1995). BNSF's motion on these grounds will be denied.

iii.  References to FELA as Logsdon's sole remedy

BNSF seeks to exclude any suggestion that a FELA award is Logsdon's "sole remedy, only chance, or sole available source for damages or compensation." Filing 172 at 3. Logsdon argues that such references may be necessary because "most members of the jury panel may hold a preconceived and commonly held notion that all work-related injuries are covered by state workers' compensation and that the Plaintiff in this case is somehow trying to 'double dip' or collect twice." Filing 189 at 8.

The Court will grant BNSF's motion on these grounds. Indeed, as several courts have recognized, testimony regarding the plaintiff's ineligibility for worker's compensation is irrelevant to the underlying FELA claim, and unfairly prejudicial to the railroad. *See Loos v. BNSF R. Co.*, 2015 WL 5039342, at *2 (D. Minn. 2015); *Campbell v. BNSF Ry. Co.*, 2011 WL 799743, at *1 (D. N.D. 2011); *Magelky v. BNSF Ry. Co.*, 2008 WL 238451, at *8 (D. N.D. 2008) (citing *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006)). Accordingly, Logsdon will not be permitted to present argument or evidence that this litigation is his sole avenue for recovery.

iv.  References to Logsdon's gross wage loss as a measure of damages

BNSF argues that Logsdon should not introduce evidence of his gross wage loss at trial. Filing 176 at 6. A prevailing FELA plaintiff is entitled to recover his after-tax income losses, not gross wages, and his award is not

subject to federal income taxation. *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 493-94 (1980).

Logsdon argues that evidence of his gross wage loss is nonetheless relevant because gross wage loss is a necessary factor in calculating net wage loss, and that the jury is entitled to understand how the plaintiff's net wage loss was calculated to assess whether the numbers advanced by the parties are credible. *See* filing 189 at 10. The Court agrees with Logsdon's position, and BNSF's motion on these grounds will be denied. *See Stevenson v. Union Pacific R.R. Co.*, 2009 WL 652932, at *5 (E.D. Ark. 2009); *Johnson*, 2007 WL 2914886, at *3. The parties may introduce their respective versions of Logsdon's gross wage loss to explain the avenue to their respective net wage loss calculations, and the jury will be properly instructed to only award net economic damages.

v. <u>BNSF wages in establishing damages</u>

BNSF seeks to exclude any evidence regarding Logsdon's claimed past wage loss, future wage loss, loss of corresponding fringe benefits, or diminished earning capacity "based upon wages as a BNSF laborer or relief foreman after [Logsdon's] dismissal from service from BNSF on August 27, 2013[.]" Filing 172 at 4. The railroad argues that calculating past wage loss beyond Logsdon's dismissal and projecting future economic damages on his railroad wages constitutes "legal fiction." Filing 173 at 6.

As BNSF acknowledges, the Eighth Circuit rejected a similar argument in *Martinez v. Union Pac. R. Co.*, 82 F.3d 223, 227-28 (8th Cir. 1996). There, the trial court permitted the plaintiff, who was injured 30 minutes before his termination, to rely on his railroad earnings as the foundation for his post-termination wage loss claim. The Eighth Circuit affirmed, noting that the

plaintiff's economic expert, using his railroad earnings as a basis of comparison, testified to other jobs that the plaintiff could have performed at the same or similar salary. *Id.* Here, Logsdon's expert intends to use his railroad earnings as a foundation for what Logsdon may have otherwise earned outside of BNSF's employ. *See* filing 189 at 12. BNSF will counter that testimony with its own expert. It will be up to the jury to weight that evidence in determining Logsdon's future earnings capacity. *See generally Loos*, 2015 WL 3970169, at *7-8; *Pothul v. Consol. Rail Corp.*, 94 F. Supp. 2d 269 (N.D.N.Y. 2000); *Graves v. Burlington N. & Santa Fe Ry. Co.*, 77 F. Supp. 2d 1215, 1219 (E.D. Okla. 1999).

### vi. References to alternative methods of removing or cleaning up coal

The parties agree that, at the time of Logsdon's alleged injury, BNSF employed at least one alternative method for removing residual coal. BNSF seeks to exclude any testimony regarding that alternative method, arguing that it is irrelevant, misleading, and unfairly prejudicial. *See* filing 173 at 8.

The existence of a "safer alternative method" does not, without more, conclusively establish negligence on the part of the railroad. *See Chicago, R.I. & Pac. R.R. v. Lint*, 217 F.2d 279, 282-83 (8th Cir. 1954); *see also McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1027 (M.D. Tenn. 1995) *aff'd*, 56 F.3d 64 (6th Cir. 1995). But it is relevant to the determination of reasonable care. *Heater v. Chesapeake & Ohio Railway Co.*, 497 F.2d 1243, 1247 (7th Cir. 1974); *see Huckaba v. CSX Transp. Inc.*, 2015 WL 672334, at *5-6 (S.D. Ill. 2015); *Campbell v. Consol. Rail Corp.*, 2009 WL 36889, at *6 (N.D.N.Y. 2009); *Cook v. CSX Transp., Inc.*, 2008 WL 2275544, at *3 (M.D. Fla. 2008); *Swoope v. CSX Trasnp., Inc.*, 2015 WL 12564948, at *3 (N.D. Ga. 2015); *see also Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006)

(proof that a safer alternative existed makes it "more probable" that defendants failed to exercise reasonable care). Accordingly, Logsdon may introduce evidence of the alternative method. BNSF's argument essentially is that evidence of a safer alternative method should be excluded because that evidence, standing alone, does not prove the plaintiff's case. That may be so. But the issue at this point is not whether Logsdon has enough evidence to submit to the trier of fact, it is simply whether evidence of a safer alternative is relevant and admissible, and it is, at least at this point. Whether Logsdon is able to present enough evidence of BNSF's negligence to submit to the trier of fact is an issue that will be taken up on an appropriate motion after evidence is submitted.

vii. <u>Testimony regarding a "rash of injuries" in 2012; a "safety stand down" in the Alliance, Nebraska facility; safety awards, or the failure to win such awards; injury statistics and the reportability of injury incidents; and reference to BNSF's incentive compensation plan</u>

BNSF seeks to exclude evidence which, generally speaking, suggests that Mechanical Zone 9 had experienced a significant number of workplace injuries in or around 2012. Filing 173 at 8-9. The railroad has submitted a separate, yet related motion regarding evidence pertaining to Logsdon's previously-dismissed claim under the Federal Railroad Safety Act. Filing 174.

The parties generally agree that the events surrounding Logsdon's termination are not relevant to the FELA claim unless BNSF specifically invokes the misrepresentations in Logsdon's January 16, 2013 injury report. BNSF has strongly indicated that it does not intend to do so. Assuming that holds true, the evidence described in filing 172, objections 26-30, and filing

174 are irrelevant, and any objections to the introduction of such evidence will be sustained. However, because the relevance of such testimony depends on the evidence adduced at trial, BNSF's in limine motions will be denied without prejudice to reassertion.

Relatedly, BNSF objects to any testimony that the "sole basis for [Logsdon's] failure to resume his former railroad employment with BNSF is due to his alleged injury from the claimed coal and slip paper incident or that he would have worked for BNSF until retirement." Filing 172 at 6. However, the Court understands, based on representations at the August 21 hearing, that this objection may no longer be in dispute. So, BNSF's motion to exclude will be denied without prejudice to reassertion.

viii.    Measures taken by BNSF after the alleged accident

BNSF seeks to exclude evidence of subsequent remedial measures. Filing 189 at 21; see Fed. R. Evid. 407. Specifically, the railroad objects to any suggestion that, following the alleged incident, it took measures to ensure that all residual coal was dumped outdoors. If, in fact, the railroad has barred the use of slip paper to remove residual coal, then Rule 407 applies. BNSF's motion will be denied at this time without prejudice to reassertion.

### 2.  BNSF's Motion in Limine: Filing 184

BNSF requests an order prohibiting plaintiff and his counsel from "using or referring in any manner whatsoever at the trial of this matter, directly or indirectly, to medical bills or expenses paid by insurance provided to plaintiff by BNSF pursuant to labor agreements between the carrier and plaintiff's union." Filing 184 at 1. Logsdon does not oppose this request, *see* filing 197, and BNSF's motion will be granted.

### 3. Logsdon's Motion in Limine: Filing 191

Logsdon requests an order precluding BNSF, its counsel, and its witnesses from directly or indirectly presenting or arguing 7 separate categories of information.

i. <u>Collateral source benefits</u>

Logsdon seeks to exclude any reference to his receipt of disability-related benefits. Filing 192 at 1. The parties agree that such evidence is inadmissible, so long as Logsdon does not open the door. *See Moses*, 64 F.3d at 416. Accordingly, Logsdon's motion will be denied without prejudice to reassertion at trial.

ii. <u>Improper character evidence regarding BNSF as a "safe company" and any inflammatory arguments by BNSF attorneys</u>

As explained at the August 21 hearing, Logsdon's motion on these grounds will be denied without prejudice to reassertion at trial.

iii. <u>References to Logsdon as the "only injured employee"</u>

Logsdon's seeks to exclude "[a]ny reference that Plaintiff is the only employee of BNSF who has ever claimed injury from the work practice of using slip paper to remove coal from underneath a railcar." Filing 191. At the August 21 hearing, however, Logsdon's attorney acknowledged that such evidence is relevant to foreseeability. Logsdon's motion will be denied on these grounds.

iv. <u>BNSF rules and procedures</u>

Logsdon argues that BNSF should be "precluded from using BNSF rules, policies and procedures that are too general and vague with no objective standard as a basis to charge Plaintiff with contributory negligence." Filing 191 at 1. The Court will take up any relevance or foundational objections regarding these materials at trial. Logsdon's motion is denied without prejudice to reassertion.

v. Alcohol-related references and prior workplace injury

Logsdon seeks to exclude any reference to his prior alcohol use, his past treatment for alcohol-related issues, or the fact that he had two prior DUI citations. Filing 191 at 2. He also moves to exclude any reference to prior injuries he sustained while employed with Western Sugar. BNSF does not object to Logsdon's motion on these grounds. Filing 199 at 6-7. Accordingly, Logsdon's motion to exclude this evidence will be granted.

4. **BNSF's motion to limit testimony of non-retained expert witnesses: Filing 105**

BNSF moves to exclude causation testimony from three of Logsdon's treating physicians. It also moves to exclude testimony from Dr. John G. Spethman regarding alleged physical limitations "that prevent [Logsdon] from functioning without restrictions[.]" Filing 105 at 2. As grounds for its motion, BNSF argues that Logsdon failed comply with Fed. R. Civ. P. 26(a)(2)(B), which requires disclosure of expert reports. It also argues that, even assuming Logsdon complied with Rule 26, the treating physicians' testimony is unreliable, and is therefore inadmissible under Fed. R. Evid. 702. *See* filing 105.

i. Rule 26(a) Disclosures

In FELA cases, expert testimony is often required to establish the causal connection between the accident and some item of physical or mental injury "unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile." *Brooks v. Union Pacific R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010) (quoting *Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir.1987)). Because Logsdon's injury has no obvious origin, "expert testimony is necessary to establish even that small quantum of causation required by FELA." *Brooks*, 620 F.3d 896.

During discovery in this case, Logsdon disclosed to BNSF his intent to call Dr. Stephen Annest, Dr. Alicia Feldman, and Dr. Eric Gardner—all treating physicians—on the issue of causation. *See* filing 107-2 at 2-9. He did not, however, serve BNSF with written reports under Rule 26(a)(2)(B), which applies to any expert "retained or specially employed to provide expert testimony in the case[.]" Logsdon's failure to do so, BNSF now argues, warrants exclusion of the treating physicians' testimony. *See* filing 106 at 4.

A treating physician may be deemed to be "retained or specifically employed to provide expert testimony" if he or she testifies to the cause of the plaintiff's injury. The operative question in that regard is whether the physician made the causation determination in the course of providing treatment. *Montes v. Union Pac. R. Co.,* 2011 WL 1343200, at *2 (D. Neb. 2011) (citing *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729 (7th Cir. 2010)). If the determination was made in the course of treatment, then the plaintiff need not provide a Rule 26(a)(2)(B) report. If, however, the opinion was rendered in the course or in anticipation of litigation, then Rule 26(a)(2)(B) applies, and a report must be disclosed. *Montes,* 2011 WL

1343200, at *2; *Navrude v. U.S. (USPS)*, 2003 WL 356091, at *7 (N.D. Iowa 2003) (collecting cases).

The Court agrees with BNSF that the causation opinions at issue here were not made in the course of providing treatment, and that Rule 26(a)(2)(B) therefore applies. But the Court is not convinced that exclusion is the appropriate remedy. Accordingly, BNSF's motion will be denied.

The Court's power to exclude testimony not properly disclosed in compliance with its discovery and pretrial orders is essential to its control over the case. *Sellers v. Mineta*, 350 F.3d 706, 711 (8th Cir. 2003). Accordingly, when a party fails to provide information or identify a witness in compliance with Rule 26(a), the Court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In doing so, the Court balances the following factors: (1) the reason for plaintiff's noncompliance; (2) surprise and prejudice to BNSF; (3) the extent to which allowance of the proposed testimony would disrupt the order and efficiency of the trial; and (4) the importance of the information. *Id*.

Here, Logsdon has not provided a specific reason for his noncompliance, other than his belief that expert reports were not required. But even so, BNSF had ample notice of the nature and substance of the treating physicians' anticipated testimony, thereby reducing undue surprise or prejudice. *See* filing 107-2. Further, BNSF has vigorously deposed the treating physicians, questioning each about the basis of their respective causation determinations. Accordingly, while the Court in no way condones Logsdon's failure to produce the reports, it cannot be said—at least on these facts—that exclusion is warranted. BNSF's motion to exclude on these grounds will be denied.

ii. <u>Causation Testimony</u>

BNSF next contends that the causation opinions of Dr. Annest, Dr. Feldman, and Dr. Gardner are inadmissible under Fed. R. Evid. 702. In order to be admissible, expert testimony must be both relevant to a material issue and reliable. *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir. 2006); *see* Fed. R. Evid. 702. As a "gatekeeper," this Court must ensure that both conditions are satisfied, screening the proposed evidence and evaluating it in light of the specific circumstances of the case. *Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006). The party offering the challenged testimony—here, Logsdon—bears the burden of establishing admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993)).

Under Rule 702, proposed expert testimony must meet the following three prerequisites: (1) evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact; (2) the proposed expert witness must be qualified to assist the finder of fact; and (3) the proposed evidence must be reliable or trustworthy in an evidentiary sense so that if the finder of fact accepts it as true it provides the assistance the finder of fact requires. *Lauzon*, 270 F.3d at 686 (internal citations omitted). The Court also considers: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community. *Daubert*, 509 U.S. at 592–94. This evidentiary inquiry is meant to be flexible and fact-specific, and a

court should "use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005).

Here, BNSF argues that Logsdon's treating physicians "lack a reliable basis or methodology to provide a causation opinion." Filing 106 at 15. Specifically, the railroad contends that none of the physicians performed any assessments or analysis to determine if the "mechanics of the alleged work incident resulted in his symptoms, such as an accident reconstruction." Filing 106 at 15. Rather, it claims, the experts' opinions as to causation are based solely on what Logsdon reported to them regarding his alleged work incident.

Logsdon argues that the evidence is admissible under Rule 702 because treating physicians personally observed Logsdon, reviewed his medical reports, and performed "exhaustive" differential diagnoses in reaching their respective opinions. Filing 113 at 23. He further points out that the witnesses, contrary to BNSF's argument, need not possess "railroad specific knowledge" or have a background in mechanical engineering or accident reconstruction to render an opinion regarding causation. Filing 113 at 24.

After reviewing the relevant testimony, the Court concludes that the treating physicians' testimony regarding the cause of Logsdon's alleged injury is admissible under Fed. R. Evid. 702. Indeed, Logsdon provided each physician with a history of his condition,[3] and what he claimed to be the underlying cause—that is, pulling slip paper. The physicians then performed multiple physical examinations and diagnostic testing with respect to

---

[3] To be sure, BNSF highlights in its depositions potential inadequacies in Logsdon's self-reported medical history. But those issues may be explored on cross-examination. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000) (medical professionals reasonably may be expected to rely on self-reported patient histories which are subject to meaningful exploration on cross-examination).

Logsdon, which confirmed, in their respective medical opinions, the cause of the underlying medical condition. Based on that information, the physicians testified that Logsdon's injury was caused, at least in part, by the slip paper incident. Filing 107-6 at 9-10; filing 107-3 at 10; filing 114-5 at 21.

It is true, as BNSF notes, that the testifying physicians are not *also* accident reconstructionists, and none personally witnessed the underlying injury giving rise to his claim. "[But] such certitude is not required by the Federal Rules of Evidence." *Laski v. Bellwood*, 1197 WL 164416, at *3 (6th Cir. 1997). Rather, where, as here, the physician's opinions are based on personal examinations, medical knowledge, and valid differential diagnoses, such testimony is sufficiently reliable to reach the jury. *See Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 988-89 (8th Cir. 2001) (expert opinion must be supported by "good grounds" based on what is known). BNSF's arguments go to the weight, not admissibility, of the evidence, and the railroad was free to explore such issues on cross-examination. BNSF's motion to exclude the causation testimony will be denied.

iii. <u>Testimony regarding disability</u>

BNSF seeks to exclude testimony regarding Dr. Spethman's May 2014 assessment, in which he concluded that Logsdon was permanently disabled from work. Filing 107-7 at 6.[4] According to BNSF, such testimony is not reliable because Dr. Spethman "did not perform any functional capacity exam or testing to identify [Logsdon's] restrictions or vocational capabilities." Filing

---

[4] BNSF also objects to testimony regarding Logsdon's functional capabilities or restrictions from Dr. Annest, Dr. Feldman, and Dr. Gardner. Filing 106 at 20. Logsdon does not object to that portion of BNSF's motion, *see* filing 113 at 26, so it will be granted.

106 at 6. Rather, BNSF argues, Dr. Spethman's assessment was based solely "on his failure to identify a cause for plaintiff's symptoms." Filing 106 at 19.

The foundation for Dr. Spethman's opinion regarding disability is clearly insufficient to support admissibility. Indeed, as Dr. Spethman acknowledged in his deposition, he does not know the mechanics of Logsdon's injury, did not render a diagnosis, does not know what type of work Logsdon did at BNSF, and did not undertake *any* type of inquiry to analysis of Logsdon's functional capacity or vocational capabilities. Thus, any testimony or exhibits from Dr. Spethman *regarding* Logsdon's alleged *disability* will be excluded.

iv. <u>Opinions regarding RSD or CRPS</u>

BNSF moves to exclude testimony "as to a possible underlying diagnosis of [reflex sympathetic dystrophy] or [complex regional pain syndrome] from Dr. Annest and Dr. Feldman[.]" Filing 106 at 21. Logsdon acknowledges that none of his treating physicians have testified to such conditions, and he therefore does not dispute BNSF's request. Filing 113 at 27. Accordingly, BNSF's motion on those grounds will be granted.

## CONCLUSION

Therefore, the parties' motions will be granted in part, and denied in part, as set forth above. The parties may renew their objections, if applicable, at trial.

IT IS ORDERED:

1. BNSF's motion to exclude non-retained expert testimony (filing 105) is granted in part, and denied in part, as set forth above.

2. BNSF's motion in limine (filing 172) is granted in part, and denied in part, as set forth above.

3. BNSF's motion in limine regarding alleged FRSA retaliation (filing 174) is denied without prejudice to reassertion at trial.

4. BNSF's motion in limine regarding "disability determinations" (filing 175) is granted.

5. BNSF's motion in limine regarding medical bills or expenses (filing 184) is granted.

6. Logsdon's motion in limine (filing 191) is granted in part, and denied in part, as set forth above.

Dated this 25th day of August, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge